UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-4510-GW(ASx) | Date | January 25, 2018 |
|---|---|---|---|
| Title | *Celena King v. Great Am. Chicken Corp., Inc. d/b/a Kentucky Fried Chicken, et al.,* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | Katie Thibodeaux | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Kayvon Sabourian | Mark D. Kemple |
| Launa Adolph | Ashley Michelle Farrell |

**PROCEEDINGS:**     **PLAINTIFF'S MOTION TO REMAND [38]**

The Court's Tentative Ruling is circulated and attached hereto. Court hears oral argument. For reasons stated on the record, Plaintiff's Motion is TAKEN UNDER SUBMISSION. Court to issue ruling.

|  | : | 25 |
|---|---|---|
| Initials of Preparer | JG | |

***King v. Great Am. Chicken Corp, Inc.***, Case No. 2:17-cv-04510-GW-(ASx)
Tentative Ruling on Motion to Remand

Great American Chicken Corp, Inc. ("Defendant") removed this case to federal court on June 19, 2017,[1] citing the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), as the basis for this Court's subject matter jurisdiction. Celena King ("Plaintiff") does not contest this basis for subject matter jurisdiction, or otherwise argue that federal subject matter jurisdiction is lacking here. However, she has filed a motion to remand arguing that the Court must *decline* jurisdiction under other provisions of CAFA because over two-thirds of the members of her putative class are citizens of California and other statutory requirements for such a declination are met.

A federal court must decline jurisdiction over a "minimal diversity" class action such as this if two-thirds or more of the members of the proposed class(es), in the aggregate, and the primary defendants are citizens of the state in which the action was originally filed. *See* 28 U.S.C. § 1332(d)(4)(B); *see also* O'Connell & Stevenson, California Practice Guide:  Federal Civil Procedure Before Trial (2017) ("O'Connell & Stevenson") ¶ 2:1445, at 2C-45. This is referred to within the relevant case law as the "home state" exception to CAFA jurisdiction. In addition, a federal court must decline jurisdiction over such a class action where more than two-thirds of the class members and at least one defendant are "citizens" of that state and the alleged wrongdoing occurred there, "significant relief" is being sought from the local defendant whose alleged conduct forms a "significant basis" for the plaintiff's claims, and no other class action has been filed within the past three years on behalf of the same persons against any defendant asserting the same or similar factual allegation. *See* 28 U.S.C. ¶ 1332(d)(4)(A). This is referred to within the relevant case law as the "local controversy" exception. Plaintiff moves for remand under both exceptions.

The only aspect of either the "home state" exception or the "local controversy" exception that is disputed here is whether Plaintiff has satisfied her burden, *see Allen v. Boeing Co.*, 821 F.3d 1111, 1116 (9th Cir. 2016), to demonstrate that two-thirds or more of

---

[1] The case was originally filed in the Superior Court of the State of California, County of Los Angeles on January 10, 2017. *See* Notice of Removal ¶ 5; Docket No. 1-1.

1

the putative class members are citizens of California.  At the time of removal, the putative class in this case was defined as "all current and former non-exempt employees of DEFENDANTS in the State of California at any time within the period beginning four (4) years prior to the filing of this action and ending at the time this action settles or proceeds to final judgment."  *See* First Amended Complaint, Docket No. 1-2, ¶ 5.  The proposed class definition remains the same in the operative Third Amended Complaint.  *See* Docket No. 24, ¶ 8.  The parties have stipulated to the fact that at least 67% of the *last-known addresses* for putative class members are in California.  *See* Docket No. 30; Docket No. 36, at 3:18-24, 4:21-24, 8:7-11, 11:14-24.  They apparently reached this stipulation in lieu of taking discovery bearing on the point.  *See generally Mondragon v. Capital One Auto Finance*, 736 F.3d 880, 885-86 (9th Cir. 2013).

Defendant believes there are a number of reasons why this stipulation does not do the trick for Plaintiff in light of her burden.  For one thing, it emphasizes that residence does not equate to citizenship.  In addition, it argues that even if it did, using an address that an employee (who worked for it at some point in time in the five-year period prior to the Complaint's filing) gave it at some point in time during that individual's employment does not reveal where the person was living – much less the person's *citizenship* – at the time of removal.

There is some uncertainty in the case law concerning what role evidence of residence can play, in line with Plaintiff's burden, in satisfying the requisite elements of the "home state" and/or "local controversy" exception.  As an initial matter, the Court notes that a leading practice guide – apparently basing its statement entirely upon a 2015 decision from the Eighth Circuit Court of Appeals, discussed further below – states that "plaintiffs in a class action *cannot use* last known addresses to establish citizenship," commenting further "[t]hat a class member may have a residential address in a state does not mean he or she is a citizen of that state."  O'Connell & Stevenson ¶ 2:1446, at 2C-45 (citing *Hood v. Gilster-Mary Lee Corp.*, 785 F.3d 263, 265-66 (8th Cir. 2015)) (emphasis added).  But Ninth Circuit authority certainly does not appear to *prohibit* use of such evidence – in fact, as discussed below, the Ninth Circuit appears to reject such a notion – even if it does stop short of indicating that such evidence would be sufficient by itself.

The Ninth Circuit has indeed observed "[t]hat a purchaser may have a residential

2

address in California does not mean that person is a citizen of California." *Mondragon*, 736 F.3d at 884. But *Mondragon* was not a case involving employment in California. Nor did it even confront any evidence of class members' residential addresses (meaning that the quoted statement would be, technically, *dicta*). Instead, it simply involved a class that had been defined "to be limited to persons who 'purchased a vehicle in California for personal use to be registered in the State of California.'" *Id.* at 883. The Ninth Circuit "imagine[d] that some automobiles were purchased and registered in California by members of the military, by out-of-state students, by owners of second homes, by other temporary residents who maintained legal citizenship in other states, and by persons who live in California but are not U.S. citizens." *Id.* at 884. It is not at all clear that similar sufficiently-serious questions would be raised in a case that, by definition, is limited to individuals who were *employed in California*.[2]

Moreover, unlike here, the plaintiff in *Mondragon* "presented no evidence" to support the proposition that members of such a class would "necessarily be California citizens." *Id.* The Ninth Circuit noted that remand under Section 1332(d)(4) could not be based "simply on a plaintiff's allegations," and that "[a] complete lack of evidence" did not satisfy the applicable preponderance of the evidence standard. *Id.* at 884; *see also Brinkley v. Monterey Fin'l Servs., Inc.*, 873 F.3d 1118, 1121 (9th Cir. 2017). It was in that context that the Ninth Circuit approvingly quoted from the Seventh Circuit's decision in *In re Sprint Nextel Corp.*, 593 F.3d 669, 674 (7th Cir. 2010), in stating that allowing a district court to make the required factual finding in the absence of any evidence would be "freewheeling discretion amount[ing] to no more than 'guesswork. Sensible guesswork, based on a sense of how the world works, but guesswork nonetheless.'" *Mondragon*, 736 F.3d at 884. Here, Plaintiff has evidence in the form of the parties' stipulation.

Notwithstanding the limitations placed upon the import of residential addresses in *Mondragon*, the Ninth Circuit did, however, announce in that case that "a party with the burden of proving citizenship may rely on the presumption of continuing domicile, which provides that, *once established*, a person's state of domicile continues unless rebutted with

---

[2] Defendant's "d/b/a" is Kentucky Fried Chicken. *See* TAC at 1 (caption page). Plaintiff worked for Defendant at its "restaurant in Palmdale, California." *See id.* ¶ 3. Suffice it to say, the Court finds it considerably unlikely that a sizable portion of the putative class actually traveled from some other state to work for Defendant at its fast-food restaurants.

sufficient evidence of change," further commenting that the principle had "been widely accepted, including by this circuit."  736 F.3d at 885 (emphasis added); *see also Garcia v. Task Ventures, LLC*, No. 16-cv-809-BAS (JLB), 2016 WL 7093915, *3 (S.D. Cal. Dec. 6, 2016) ("Though plaintiffs may submit evidence for the court's consideration, they are not required to submit multiple points of data probative of citizenship for each potential class member, but rather plaintiffs 'may rely on the presumption of continuing domicile, which provides that, once established, a person's state of domicile continues unless rebutted with sufficient evidence of change.'"); *Busker v. Wabtec Corp.*, No. 2:15-cv-08194-ODW-AFM, 2016 WL 953209, *5 (C.D. Cal. Mar. 14, 2016).  Of course, this rule begs the question:  can Plaintiff rely on this presumption if she has not already "established" domicile in California for two-thirds or more of her putative class when her showing is based only on the existence of residential addresses in the State?

But *Mondragon* also noted that "numerous courts treat a person's residence as prima facie evidence of the person's domicile," though it found no evidence that the Ninth Circuit had adopted that position yet and declined to reach the issue itself because it was not squarely presented by the appeal.  *Mondragon*, 736 F.3d at 886; *see also Garcia*, 2016 WL 7093915, at *4 ("[N]umerous courts have treated a person's residence as *prima facie* evidence of citizenship.").  In addition, notwithstanding its earlier statement that having a California residential address "does not mean that [a] person is a citizen of California," *id.* at 884, *Mondragon* equally rejected the notion "that evidence of residency can never establish citizenship."  *Id.* at 886; *see also Brinkley*, 873 F.3d at 1122 n.2 (remarking, in a non-employment case, that "[b]ecause the size of the class is unknown, we need not address whether the residential and mailing addresses Brinkley submitted constitute prima facie evidence of citizenship for purposes of a CAFA exception."); *Calderon v. Total Wealth Mgmt., Inc.*, No. 15CV1632 BEN (NLS), 2015 WL 5916846, *2 n.6 (S.D. Cal. Oct. 8, 2015) (acknowledging "a connection between residency and citizenship").  It simply instructed courts to "consider 'the entire record' to determine whether evidence of residency can properly establish citizenship" (with resulting factual findings subject to "clear error review") and noted that, "[a]s a general proposition, district courts are permitted to make reasonable inferences from facts in evidence, and that is true in applying the local controversy exception under CAFA, as well."  *Mondragon*, 736 F.3d at 886; *see*

4

*also Brinkley*, 873 F.3d at 1121; *Busker*, 2016 WL 953209, at \*5.

In its own research, the Court has located five district court decisions (one pre-*Mondragon* and four post-, and several also cited/discussed by Plaintiff) from within this Circuit that were rendered in the context of employment class actions and that relied on home address information provided during employment – or in response to discovery efforts – in order to remand. *See Bey v. SolarWorld Indus. Am., Inc.*, 904 F.Supp.2d 1103, 1105-06 (D. Or. 2012); *Garcia*, 2016 WL 7093915, at \*4 ("Relying on the assumption that the mailing address of the employees serve as a proxy for their citizenship, Ms. Garcia argues that it can be reasonably inferred from the evidence [demonstrating that 97% of putative class members taken from a random sample have mailing addresses in California] that greater than two-thirds of the total class are citizens of California.  The Court agrees."); *Walker v. Apple, Inc.*, No. 15-cv-1147 L (BGS), 2015 WL 12699871, \*3 (S.D. Cal. Sept. 17, 2015); *Reddick v. Global Contact Solutions, LLC*, No. 03:15-cv-00425-PK, 2015 WL 5056186, \*3 (D. Or. Aug. 26, 2015); *Serrano v. Bay Bread LLC*, No. 14-cv-01087-TEH, 2014 WL 4463843, \*3-4 (N.D. Cal. Sept. 10, 2014).  *Reddick*, in particular, dealt with the uncertainty sewn by *Mondragon* by reasoning that "[w]hile [evidence that approximately 97.5% of the absent members of the putative class had Oregon addresses as of the date their addresses were last known to the defendant] is insufficient to establish with certainty that a like percentage of absent putative class members were citizens of Oregon as of March 13, 2015, the date this action was removed, evidence of the putative class members' residence prior to the date of removal is nevertheless material to the relevant determination of the putative class members' citizenship at the time of removal." *Reddick*, 2015 WL 5056186, at \*3.  This Court can find no reason to disagree with that reasoning process.

Other district court decisions may inform the analysis as well, but fall short of significant persuasive value (they are obviously *never* precedential) because of key distinctions.  For instance, *Garza v. Brinderson Constructors, Inc.*, 178 F.Supp.3d 906 (N.D. Cal. 2016).  In that case, the district court refused to "infer citizenship based on plaintiff's current California employee class definitions alone" and further stated – in the absence of evidence from plaintiff – that "some of Brinderson's California employees may commute from other states, may temporarily reside in California while maintaining legal

5

citizenship in other states, or may be California residents who are not U.S. citizens." *Id.* at 916. It then concluded that it is improper, "in the absence of additional evidence," to infer California residency based on California employment. *Id.* at 917. A similar lack of evidence (or at least a lack of evidence approximating that present here) was true in *Calderon.* *See* 2015 WL 5916846, at *2 (rejecting remand motion in non-employment case where plaintiffs "ha[d] provided a complete lack of evidence as to the citizenship of the class" other than counsel's declaration stating that he had been contacted by other plaintiffs – of an unspecified number – who would fit into class, all of whom were California residents and whose investment funds were solicited in California).

Here, of course, Plaintiff *has* provided evidence. The Court would also conclude that the likelihood of workers commuting from out of state to work at Defendant's restaurants is very unlikely, certainly in any number sufficient to threaten a two-thirds finding.

What other Circuit Courts of Appeal have said in cases sharing *some* similarity with this one is ultimately of little import, considering that those decisions would not be precedential here. Nevertheless, the parties have looked to those cases, so a discussion and consideration may be warranted.

Most recently, in April 2017, the Eighth Circuit reaffirmed that – in CAFA as in traditional diversity analysis – residency does not equate to citizenship. But it did so in a case where there was no *evidence* of either residency or citizenship, just simply a class definition limited to Arkansas *residents.* *See Hargett v. RevClaims, LLC*, 854 F.3d 962 (8th Cir. 2017). The *Hargett* decision specifically rejected the plaintiff's argument "that presumptions alone may transform a challenged *allegation* of residency into the establishment of citizenship," citing *Mondragon* along with two other cases in a string-cite citation. *Id.* at 966 n.2 (emphasis added). In contrast, in *Mason v. Lockwood, Andrews & Newnam, P.C.*, 842 F.3d 383 (6th Cir. 2016), *cert. denied*, 137 S.Ct. 2242 (2017), a case arising out of the water crisis in Flint, Michigan, the Sixth Circuit relied on the complaint's limitation of the class to "residents and property owners in the City of Flint" and the "rebuttable presumption that a person's residence is his domicile" to conclude, without any submission of evidence at all,[3] that more than two-thirds of the class would be citizens of

_____

[3] In fact, because of the residence-domicile presumption, the Sixth Circuit faulted *the defendants* for "the

6

Michigan.  *See id.* at 389-90, 395.

Two years before *Hargett*, the Eighth Circuit also considered this issue in a case –
indeed, like this one, an employment case – where the plaintiffs *had* submitted evidence.
"For all of the potential class members, except the current employees, the employees
initially provided only last-known addresses, some 27 years old, and did not identify state
citizenship.  The employees wrote the potential class members seeking affidavits of
citizenship; most did not respond."  *Hood v. Gilster-Mary Lee Corp.*, 785 F.3d 263, 265
(8th Cir. 2015).  Ultimately, the district court "found that about 150 of 372, or 41 percent,
of the potential class members are clearly Missouri citizens."  *Id.*  But, in "extrapolat[ing]
the citizenship of the Missouri citizens who responded, to the citizenship for those
potential class members who did not respond," the Sixth Circuit concluded that "[t]he
fallacy is apparent."  *Id.* at 266.  "Those still at the last-known address were more likely to
respond, and those not at the last-known address were less likely to respond (and more
likely not to be Missouri citizens, or even have a valid address)."  *Id.*  Thus, the appellate
court concluded that "the last-known-address evidence in this case does not bridge the gap
between 41 percent and 67 percent."  *Id.*[4]

In contrast with *Hood*, it is worth returning to *Mason*.  There, the Sixth Circuit
persuasively explained why the presumption of continuing domicile made sense in the
context of applying the "local controversy" *exception* to subject matter jurisdiction
whereas there is a presumption against *federal jurisdiction itself* that prohibits a "mere
averment of residency" from satisfying the necessary citizenship showing in *that* context.
*See Mason*, 842 F.3d at 391-92.[5]  It then explained its belief that "the residency-domicile

complete absence of any evidence tending to rebut the presumption of domicile based on residency."
*Mason v. Lockwood, Andrews & Newnam, P.C.*, 842 F.3d 383, 395 (6th Cir. 2016).

[4] Defendant also relies on *Preston v. Tenet Healthsystem Memorial Medical Center, Inc.*, 485 F.3d 793 (5th
Cir. 2007).  But that case presented a special reason to question the accuracy of the address evidence
submitted – the "mass relocation" of individuals from certain parts of southern Louisiana following
Hurricane Katrina.  *See id.* at 799 ("Weems and Touro ask this court to presume, despite the forced mass
relocation of Orleans Parish citizens after Hurricane Katrina, that the patients' primary billing addresses
listed in the medical records accurately reflect their domicile at the time of the filing of this action, August
4, 2006, nearly a year after the hurricane.").

[5] The other Circuit-level decisions Defendant relies upon in its Opposition that are not addressed herein
suffer from this fatal – in light of the Court's reliance on the reasoning in *Mason* – distinction:  they do not
address the interplay between (allegations and/or evidence of) residence and citizenship in the context of an
*exception* to a federal court's properly-established subject matter jurisdiction.

presumption fits particularly well in the CAFA exception context, where the moving party is tasked with demonstrating a fact-centered proposition about a mass of individuals, many of whom may be unknown at the time the complaint is filed and the case removed to federal court." *Id.* at 392. Next, it returned to the distinction between federal subject matter jurisdiction and *exceptions* to that jurisdiction, and its view of how the presumptions should operate differently in the distinct contexts, as a reason to reject the other Circuit-level decisions that had rejected the rebuttable presumption of domicile in the CAFA context. *See id.* at 393. Finally, *Mason* specifically rejected the Seventh Circuit's "guesswork" concern enunciated in *Sprint* – and quoted in *Mondragon* – because such an approach would do away with presumptions generally, yet presumptions have a well-worn history across our jurisprudence. *See id.* at 393-94.[6]

Notwithstanding Defendant's belief that the decision is "deeply flawed," this Court finds *Mason*'s reasoning particularly persuasive. It roots its analysis in the history of the residence/citizenship presumption and then explains why that presumption makes sense in the "local controversy" exception to CAFA-created federal subject matter jurisdiction, even if such a presumption should not be employed in the context of assessing subject matter jurisdiction in the first place. Combining the evidence submitted here – a stipulation that *at least* two-thirds of the class members had California last-known addresses – with 1) the approach taken in *Mason*, 2) the fact that this is an employment action involving fast-food restaurants and their employees, and 3) the multiple district court cases from within this Circuit that have found address evidence to satisfy a plaintiff's CAFA-exception burden in an employment case, the Court believes that it can "make reasonable inferences from facts in evidence" to conclude that Plaintiff has equally satisfied her burden here.

While Defendant's timing-based argument – that the addresses, whatever meaning

---

[6] In *Sprint*, of course, the plaintiffs submitted *no evidence*, but simply relied on how they had defined the putative class in their attempt to fit within the home-state exception. *See In re Sprint Nextel Corp.* 593 F.3d 669, 671, 673, 675 (7th Cir. 2010). To the extent that court nevertheless adopted the broader stance – even where evidence is submitted – "that a court may not draw conclusions about the citizenship of class members based on things like their…mailing addresses," *id.* at 674, for the reasons set forth in *Mason*, this Court would disagree. When there is *evidence* of California addresses as the last-known addresses for at least two-thirds of a putative class, this Court concludes that the continuing domicile doctrine/presumption allows courts to draw conclusions about citizenship in the absence of information to the contrary.

may be ascribed to them, may be stale/outdated – is not to be easily-dismissed,[7] one issue is worth some clarification.  Plaintiff needs to meet the two-thirds requirement "as of the date the case became *removable*," *Mondragon* (emphasis added), 736 F.3d at 883, not as of the date of *removal*.[8]  *See also* 28 U.S.C. § 1332(d)(7) ("Citizenship of the members of the proposed plaintiff classes shall be determined for purposes of [§ 1332(d)(4)] as of the date of filing of the complaint or amended complaint, or, if the case stated by the initial pleading is not subject to Federal jurisdiction, as of the date of service by plaintiffs of an amended pleading, motion, or other paper, indicating the existence of Federal jurisdiction."); *Hood*, 785 F.3d at 265 ("The two-thirds is determined as of the date of the filing of the complaint (or amended complaint).").   At a minimum, the date of "removability" and "removal" can be as much as 30 days apart, given the time in which state-court defendants are permitted to remove actions to federal court.  *See* 28 U.S.C. § 1446(b).  Here, Defendant removed the case on June 19, 2017, but stated that nothing had changed between the time the First Amended Complaint had been served on it on April 11, 2017 and the time of removal in order to further demonstrate removability.  *See* Notice of Removal ¶¶ 6, 8-9.  While – taking Defendant's position as true – any 30-day period in which to remove may not have been *triggered* (because neither the face of Plaintiff's

---

[7] *See Mondragon*, 736 F.3d at 884 ("[W]e imagine that at least some purchasers who were California citizens at the time of purchase subsequently moved to other states, such that they were not California citizens as of [the date of removability].  There is simply no evidence in the record to support a finding that the group of citizens outnumbers the group of non-citizens by more than two to one.").  It may be worth re-emphasizing here that *Mondragon* concerned a putative class action involving purchasers of vehicles, not individuals employed in California.

[8] In *Broadway Grill, Inc. v. Visa Inc.*, 856 F.3d 1274 (9th Cir. 2017), the Ninth Circuit concluded that, "[i]n exercising…appellate jurisdiction [under CAFA], the circuits have unanimously and repeatedly held that whether remand is proper must be ascertained on the basis of the pleadings at the time of removal."  *Id.* at 1277; *see also id.* at 1279 ("Because the existence of minimal diversity in this case must be determined on the basis of the pleadings at the time of removal in accordance with the general rule….").  As the Circuit's "leading case" for this proposition, *Broadway Grill* cited *Mondragon* – specifically, *Mondragon*'s language focusing analysis on "the date the case became *removable*."  *Id.* at 1277 (emphasis added).  *Broadway Grill* also later indicated that the Circuit "remain[ed] in agreement with the other circuits in holding that CAFA means what it says – citizenship of the class for purposes of minimal diversity must be determined as of the operative complaint at the date of removal," citing 28 U.S.C. § 1332(d)(7) as support for that conclusion.  *Id.* at 1279.  Of course, that is not what Section 1332(d)(7) says; it mentions "removal" not at all.  Whether or not these were unjustified over-statements of a principle based on inattention to the actual language used in a statute or case precedent, *Broadway Grill* dealt with an attempted *amendment of a complaint* (specifically, by limiting a class to California citizens) in order to eliminate minimal diversity, not a question of when putative class members should have their citizenship assessed for purposes of determining application of the "home state" or "local controversy" exceptions to CAFA-created jurisdiction.  *See id.* at 1276-79.

9

pleadings nor any other "paper" revealed a basis for removal), *see id.* ¶ 9, if the case was "removable" on the day Defendant actually removed it, it must likewise have been "removable" on April 11, 2017.  In any event, the difference between these dates is effectively irrelevant here because the parties' two-thirds stipulation and the other evidence submitted in connection with the motion do not place any emphasis on any particular date, other than by virtue of the April 11 date being two months closer to whatever date any putative class member submitted his or her last-known-address to Defendant.

At least one district court has dealt with a similar timing argument, but relied on the continuing-domicile presumption to dismiss the concern.  *See Garcia*, 2016 WL 7093915, at *4 (rejecting – because of ability to rely on presumption of continuing domicile – argument that address evidence was insufficient because it merely showed where class members resided four years earlier, not as of the time of removal).  Given the fact that Plaintiff here has not merely relied on allegations, or on how her putative class is defined, but on evidence of California residency for at least two-thirds of the class, and given the reasons enunciated in *Mason* for why a presumption as to domicile is appropriate perhaps especially in CAFA cases (at least when an *exception* to CAFA jurisdiction is concerned), this Court believes that Plaintiff has done enough to put the issue back in Defendant's court.  In return, Defendant has not done enough to cause the Court to question Plaintiff's satisfaction of her burden.

It is true, as Plaintiff points out, that Defendant has only come forward with evidence of one class member who, since leaving employment with Defendant, has moved to a different state with an apparent intention to remain there.  *See* Declaration of Lenon Ford, Docket No. 40-2.[9]  This shortcoming, in and of itself, is ordinarily not meaningful (at least in the *absence* of affirmative evidence from Plaintiff that might kick-in a residence-domicile presumption) because it is the plaintiff's burden to demonstrate the applicability

---

[9] In addition to the one putative class member Defendant has identified as not being a California citizen as of the filing of the Complaint and the time of removal, Defendant also has presented a declaration from its Payroll & Benefits Manager indicating "personal knowledge that many of Defendant's employees, including many putative class members, are not U.S. citizens, but instead are authorized to work in the United States via a work permit, green card and/or other authorizing document."  Declaration of Geleen Limos, Docket No. 40-1, ¶ 9.  The declaration does not identify the basis for this "personal knowledge," does not attempt to define what "many" means, and admits that Defendant "does not require [that] employee applicants or employees provide [it with] proof of U.S. citizenship."  *Id.*  As a result, the Court affords this evidence very little weight in its calculus.

of a CAFA exception. *See Garza*, 178 F.Supp.3d at 916 ("As it is plaintiff's burden to show an exception to CAFA jurisdiction, plaintiff cannot rely on Brinderson's failure to identify class members who are citizens of other states."); *see also Brinkley*, 873 F.3d at 1122. Nevertheless, to ultimately find Plaintiff's argument flawed, the Court would have to conclude that more than one-third of the putative class – which Defendant asserts includes over 6,000 persons, *see* Docket No. 40, at 3:15-4:1 – were not California citizens as of the time of removability/removal. The Court sees absolutely no reason to reach that conclusion here.

Of course, if Defendant is correct that the Court should *not* determine that Plaintiff has now done enough to meet her burden, that would not be the end of the matter. The Court would then give Plaintiff the opportunity to conduct – should she so desire – jurisdictional discovery (though it was presumably a desire by one or both parties to *avoid* that discovery that led to the stipulation before the Court in the first place). *See* Docket No. 36, at 7:13-24, 9:5-12. It also very likely would stay this action pending the completion of that discovery and a presentation on what has been discovered via that effort. In contrast, although this is not a factor that influences the Court's decision on this motion one way or the other, if the Court grants Plaintiff's motion to remand on the evidentiary record before it (or even if it denies it), CAFA affords expedited appellate review in such circumstances, requiring a decision within sixty days of an appeal being filed. *See Broadway Grill, Inc. v. Visa Inc.*, 856 F.3d 1274, 1277 (9th Cir. 2017); 28 U.S.C. § 1453(c)(1)-(2).

For the foregoing reasons, the Court believes that Plaintiff has satisfied her burden to demonstrate satisfaction of both the "home-state" and "local controversy" exceptions to CAFA jurisdiction. The Court therefore grants the motion to remand.

11